IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | HON. JEROME B. SIMANDLE |
| v. | Criminal No. 04-269 (JBS) |
| NADINE HOMICK-VAN BERRY and CLINTON VAN BERRY, | **OPINION** |
| Defendants. | |

APPEARANCES:

Renèe M. Bumb, Assistant U.S. Attorney
U.S. ATTORNEY'S OFFICE
Camden Federal Building & U.S. Courthouse, 4th Floor
401 Market Street
P.O. Box 2098
Camden, New Jersey 08101
     Attorney for the United States of America

Lori M. Koch, Assistant Federal Public Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
800-840 Cooper Street
Suite 350
Camden, New Jersey 08102
     Attorney for Defendant Nadine Homick-Van Berry

Donald Francis Manno, Esq.
900 Dudley Avenue
Suite 250
Cherry Hill, New Jersey 08002
     Attorney for Defendant Clinton Van Berry

**SIMANDLE**, District Judge:

     Clinton Van Berry and his wife, Nadine Homick-Van Berry,

have been charged together in a four count indictment

("Indictment") with (a) conspiracy and attempt to obstruct

commerce through robbery (Counts 1 and 2); and (b) bribery and

conspiracy to commit bribery concerning a federally funded

program (Counts 3 and 4).  The issue presented here is whether a single trial before one jury would afford them each a fair trial. For the following reasons, the Court concludes that it would not – Counts 1 and 2 must be severed from Counts 3 and 4.[1]

## I.  BACKGROUND

The following events have given rise to the charged counts.

A.   Bribery and Conspiracy to Commit Bribery – Counts 3 & 4

1.   2002 West Cape May Sewer Replacement Program

According to the Indictment and the brief of the Government, on or about April 17, 2002, the Borough of West Cape May, New Jersey ("West Cape May" or the "Borough") awarded a sewer contract for the Borough's 2002 Sewer Replacement Program ("Sewer Replacement Project").  The Sewer Replacement Project was designed to replace the deteriorating terra cotta sewer pipes on five streets from Broadway to Park Boulevard.  The events preceding the award of that contract are what the Court is concerned with here.

Roughly six months before the Borough awarded the Sewer Placement Project contract, Mrs. Van Berry allegedly approached a longtime acquaintance, a contractor who owned an excavating and contracting business that, in part, installed sewer drainage and water mains ("Contractor").  She allegedly informed him that she

---

[1] Mr. and Mrs. Van Berry also seek severance of defendants on the first two counts.  For the reasons expressed below, that request will be denied.

would be able to provide him with the Engineer's Estimate of Construction Costs for the Borough's Sewer Replacement Program ("Engineer's Estimate").[2]  In turn, Mrs. Van Berry allegedly demanded that in the event the Contractor successfully bid on the project, he would share a percentage of his contract.  Unbeknown to Mrs. Van Berry at the time, the Contractor was an F.B.I. cooperator.

Subsequently, in the Fall of 2001, Mr. Van Berry allegedly approached the Mayor of West Cape May.  Mr. Van Berry and the Mayor were acquainted with one another through Mr. Van Berry's previous employment with the Borough of West Cape May.  At the time of the meeting, Mr. Van Berry was employed by the City of Atlantic City, New Jersey as the Assistant Municipal Tax Collector.  In that capacity, Mr. Van Berry was responsible for handling the daily receipts of the tax office and preparing them for deposit to the bank.

During the meeting with the Mayor, Mr. Van Berry allegedly suggested that if the Mayor assisted him in obtaining the Engineer's Estimate, there would be an "envelope" in the mail. Feeling that he was being bribed, the Mayor contacted the Federal Bureau of Investigation ("F.B.I.").  According to the Indictment,

_____

[2] The Engineer's Estimate consists of nonpublic information which details projected costs associated with a particular construction project.  The Engineer's Estimate, therefore, would be of benefit to any contractor in terms of providing an advantage in formulating a bid amount for a particular project.

3

from October 2001 to April 4, 2002 (shortly before the Borough awarded the contract), Defendants allegedly continually attempted to bribe the Mayor for the Engineer's Estimate for the Sewer Replacement Project.  Moreover, they allegedly exerted force on the Contractor to bid on the project. However, because the Contractor was unable to obtain a performance bond, he never submitted a bid.

> 2.   2003 West Cape May Sanitary Sewer and Water Main
>      Improvement Program

In January of 2002, West Cape May began efforts to obtain funding for its Sanitary Sewer and Water Main Improvement Program, a project designed to replace the sanitary sewer line from Learning Avenue to Broadway ("Sewer and Water Main Project").[3]  According to the Indictment, Mr. Van Berry offered the Mayor a bribe in exchange for the Engineer's Estimate for this project.  Defendants then allegedly sought a percentage of the contract from the Contractor in the event that the Contractor made a successful bid.

On July 25, 2003, the Contractor allegedly gave Mrs. Van Berry $2,000 in cash to give to the Mayor.  According to the Indictment, on August 1, 2003 Defendants gave $500 to the Mayor, informing him that the Contractor had only given them that

---

[3] Roughly one year later, on January 31, 2003, West Cape May formally sought, and eventually received, federal funding for the Sewer and Water Main Project.

amount.  Meanwhile, Mrs. Van Berry told the Contractor that she and her husband had given the full $2,000 to the Mayor.  The following day, the Mayor informed Mrs. Van Berry that he would not provide her with the Engineer's Estimate for $500.  On August 8, 2003, Mrs. Van Berry met with the Mayor, allegedly to persuade him otherwise.  He refused and, on August 11, 2003, she allegedly demanded that he return the $500.

   B.   Atlantic City Robbery – Counts 1 & 2

        Later that year, on December 1, 2003, Mrs. Van Berry again allegedly solicited the Contractor to participate in criminal conduct.  This time, however, the plot had nothing to do with bribing the Mayor of West Cape May.  This plan involved robbing a courier who would be carrying the proceeds from a tax sale conducted by the Tax Collector of the City of Atlantic City.

        As with most municipalities, the residents and businesses located within Atlantic City are required to pay real estate taxes on a quarterly basis.  The taxpayers typically pay this tax in cash or with money orders or checks made payable to Atlantic City.  Those payments are submitted directly to the tax office in City Hall.  If, however, a property owner fails to make a timely payment, Atlantic City will issue a tax sale notice advising that, unless the taxes are paid by the date of the sale, the property will be sold and the proceeds used to pay the delinquent amount.  Following the sale, the City utilizes the services of a

5

courier to deliver the tax receipts to its depository bank located a few blocks from City Hall.  As the Assistant Municipal Tax Collector of Atlantic City, Mr. Van Berry was intimately familiar with the details surrounding such tax sales.

According to the Indictment, Mr. Van Berry conspired with Mrs. Van Berry to rob the courier who would be delivering the proceeds from the December 15, 2003 tax sale to the depository bank.  Specifically, Defendants allegedly agreed that when the courier left City Hall with the tax sale proceeds, Mr. Ven Berry would call Mrs. Van Berry and ask her how her tooth was feeling. That language was allegedly intended to convey to Mrs. Van Berry that the courier had left City Hall.  According to the Indictment, Mrs. Van Berry would then notify the Contractor who she believed would then rob the courier.

Mrs. Van Berry relayed this plan to the Contractor, who led her to believe that he had secured the aid of an accomplice in carrying out the plot.  To this end, the Contractor gave Mrs. Van Berry a disposable cellular telephone which she was to use to advise the accomplice when the courier had left City Hall.  As alleged in the Indictment, it was further part of the conspiracy that she instructed the Contractor, after he robbed the courier, to take the cash and to burn the remaining items.

On December 16, 2003, Mr. Van Berry allegedly called the courier's co-worker to inform him that the tax payments from the previous day's tax sale were ready for deposit.  Shortly

6

thereafter, as planned, he allegedly called his wife and, through the coded language, signaled to her that the courier had left City Hall.  At 1:54 that afternoon, Mrs. Van Berry called the individual she believed to be the Contractor's accomplice and stated: "I said go now."  Unbeknown to her at the time, the individual on the phone was an undercover law enforcement agent.

     C.   <u>Procedural History</u>

Following the arrests of Mr. and Mrs. Van Berry, a Grand Jury sitting in Camden returned a four count criminal indictment charging each Defendant with conspiracy to obstruct commerce by robbery, 18 U.S.C. § 1951(a) (Count One); attempt to obstruct commerce by robbery, 18 U.S.C. § 1951(a) (Count Two); conspiracy to commit bribery concerning a federally funded program, 18 U.S.C. § 371 (Count Three); and bribery concerning a federally funded program, 18 U.S.C. §§ 666(a)(2) and 2 (Count Four).  Thus, the Indictment charges the Atlantic City tax heist in Counts One and Two, and the West Cape May bribery scheme in Counts Three and Four.

Defendant Clinton Van Berry made a number of pre-trial motions which Mrs. Van Berry has joined.  The Court held a hearing on January 10, 2005 at which time the Court heard oral argument.  The Court rendered an Oral Opinion at that time, reserving decision only as to the motion to sever counts and defendants.  (<u>See</u> 1/19/05 Order.)  That severance motion is the subject of this Opinion.

7

## II.   DISCUSSION

A. Rule 8(b) Joinder

In cases involving multiple defendants, such as this one, the propriety of joinder must be tested under Rule 8(b) of the Federal Rules of Criminal Procedure, and Rule 8(a), Fed. R. Crim. P., has no application.  See United States v. Irizarry, 341 F.3d 273, 287 (3d Cir. 2003); United States v. Eufrasio, 935 F.2d 553, 567 (3d Cir. 1991).  Rule 8(b) provides:

> The indictment or information may charge 2 or more
> defendants if they are alleged to have participated in
> the same act or transaction, or in the same series of
> acts or transactions, constituting an offense or
> offenses.  The defendants may be charged in one or more
> counts together or separately.  All defendants need not
> be charged in each count.

Rule 8(b), Fed.R.Crim.P.

Here, the Government has not charged an overarching conspiracy, spanning the West Cape May and Atlantic City conduct. Instead, Defendants are each alleged to have participated in two distinct conspiracies – conspiracy to obstruct commerce by robbery, and conspiracy to commit bribery concerning a federally funded program.  Because "[s]eparate and distinct conspiracies cannot be joined together and prosecuted as a single conspiracy" under Rule 8(b), joinder here of all four charged offenses is not proper.  1A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 144 (3d ed. 1999) (and cases cited therein).

The Government here tries to overcome the lack of connection between the charged crimes by arguing that "all of the counts spring out of a common scheme and plan to corrupt the system . . . by taking advantage of publicly entrusted positions."  (Govt. Br. at 7, 10.)  This argument is tenuous.  In the first instance, the "system" referred to by the Government encompasses two separate municipalities – Atlantic City and West Cape May.  Similarly, the positions of power which defendants allegedly exploited are wholly unrelated.

To be sure, courts have upheld joinder of offenses on the theory that the defendant used his position of power to commit multiple crimes.  In United States v. Thomas, for example, the Third Circuit affirmed the district court's refusal to sever any of the thirty-one counts charged against a single defendant where "[a]ll of the counts alleged that Thomas used his position as bank president to gain access to records and accounts and to misappropriate funds from the bank."  610 F.2d 1166, 1169 (3d Cir. 1979).  In that case, the defendant, Donald Thomas, was charged with various offenses arising out of his employment as president of the First National Bank of Carbondale, Pennsylvania.  Thomas was convicted after a jury trial of seven of the thirty-one charged counts.  All but one of the counts upon which Thomas was convicted charged that as bank president he knowingly, and with the intent to defraud the bank, misapplied funds that had

been paid to the bank in violation of 18 U.S.C. § 656 (1976).[4]

The Third Circuit affirmed the trial court's conclusion that "all of the counts involved actions allegedly taken by Thomas 'in contravention of his duties as a bank officer and which injured and defrauded the bank,' and thus were of a 'sufficiently similar character to permit their joinder under (Fed.R.Crim.P) 8(a).'"[5] Id. at 1169 (citations omitted).  The court reasoned that

> [e]ach count alleged that Thomas used his position as
> bank president to gain access to and to alter bank
> records and accounts, and to misappropriate bank funds.
> And the various counts involved transactions that all
> occurred within an eighteen-month period of time.
> Thus, because each offense charged was similar in
> character to the others, initial joinder of the counts
> was permissible under Rule 8(a).

Id.

The instant case is easily distinguishable.  Here, unlike Thomas, the Government does not argue that the defendants took advantage of a single position of authority to commit the crimes charged.  Rather, the Indictment alleges that Defendants used Mr. Van Berry's position as Assistant Municipal Tax Collector to

---

[4] Counts two through four alleged that the defendant caused bills submitted by Talarico Construction Company to be inflated. Count nine charged the defendant with misapplying funds that had been paid to the bank by one of its debtors, William Fendrock. Finally, counts ten and eleven charged that Thomas had misapplied funds by excessively charging the bank's discount installment loan account.

[5] The court additionally upheld the district court's determination that joinder of the charged offenses was not unduly prejudicial under Rule 14, Fed.R.Crim.P.

perpetrate the Hobbs Act robbery and, quite separately, that they took advantage of the Mayor's position to carry out the bribery. Indeed, as to the crimes charged in Counts 3 and 4, the Government does not argue that their commission depended in any way on Mr. Van Berry's employment status with Atlantic City.  In fact, Mr. Van Berry knew the Mayor by way of Mr. Van Berry's "former employment with the borough" of West Cape May.  (Govt. Br. at 2 (emphasis added).)  Conversely, Defendants' relationship with the Mayor is alleged to have played no part in the attempted robbery charged in Counts 1 and 2.

Instead, the Government suggests that a fundamental link between the charged crimes is the Defendants' relationship with the Contractor.  Specifically, the Government contends that "[t]he Indictment reflects that the defendants' robbery scheme followed in part from the bribery scheme because of the connection and relationship of trust with the 'Individual'/'Contractor,' the government's primary cooperating witness."  (Govt. Br. at 12.)  That the same participants were involved in crimes of a separate nature, however, (or at the very least that the defendants believed the same participants were involved in separate crimes) is not sufficient to connect otherwise distinct crimes.  For if it were, seldom would joinder of distinct offenses in multi-defendant prosecutions be improper under Rule 8(b).

11

In any event, the "connection and relationship of trust" between Defendants and Contractor on which the Government relies does not connect the charged crimes for Rule 8(b) purposes.  As the Government notes, the Contractor was a "longtime acquaintance" of Mrs. Van Berry.  That longtime acquaintances may attempt to commit multiple crimes together, however, does not cause those illegal acts to be otherwise connected to each other into an overarching, uncharged scheme.

The Government's reliance on United States v. Turoff, 853 F.2d 1037 (2d Cir. 1988), is also misplaced.  That case involved the question of whether "it is impermissible to join in a single indictment multiple offenses involving tax and mail fraud schemes charged against the several defendants."  Id. at 1039.  There, three defendants (Jay Turoff and Alan and Harriet Silver) were charged in one indictment with "two fraudulent schemes" – (1) a plan to "exploit Turoff's power as the New York City Taxi and Limousine Commission Chairman to foster the production and marketing of an electronic meter for New York City medallion taxicab – the basis for the mail fraud charges" – and (2) an arrangement to obtain accounts at Hyfin Credit Union ("Hyfin") which provided the appellants with the opportunity to earn substantial taxable interest which Hyfin did not report to the IRS and which they did not declare as income on their tax returns – the basis for the tax charges.

The scheme originated when Turoff opened an account and obtained a loan from Hyfin.  Turoff would makes deposits into the account but never reported to the I.R.S. the income generated therefrom.  Edmund Lee, Hyfin's treasurer, also permitted Turoff to deduct as interest expense the payments he made on Hyfin loans.  In return for these benefits, Turoff provided to Lee confidential information regarding the lists of medallion taxi owners in New York to, thereby enabling Lee to review and approve loan application by taxi owners more quickly than competing loan institutions.

Several years later, Turoff was approached by two developers with a prototype electronic taxi meter.  Turoff described the design to his friend, Hy Schwartz, and prodded him to develop a competing model.  Turoff guaranteed Schwartz a market by requiring installation of the meters in every New York City medallion taxi cab.  Schwartz in turn approached Turoff's friends, the Silvers, to finance the project.  Schwartz and the Silvers ultimately formed a company which successfully developed an electronic taxi meter.  Shortly thereafter, the Taxi Commission tested and unanimously approved their prototype.

Subsequently, Turoff brought Alan Silver to Hyfin's offices to see Lee about the prospect of opening a non-reported interest account which would expedite the processing of loans for the medallion project.  An account was then opened and Lee agreed to

13

advance funds to the Silvers to finance the production costs of the meters in return for a "commission" of $100 per meter.  After ordering all medallion taxis to install the meters, and anticipating the sale of 3,000 meters, Turoff then demanded and received a kickback if $10 per meter.

The Indictment charged Turoff and the Silvers with various counts of mail fraud relating to the meter scheme as well as a number of tax charges.  Following a jury trial, Turoff and the Silvers were found guilty of conspiracy to defraud the United States in collection of tax revenues and for filing false tax returns.  The issue before the court was whether initial joinder of those offenses was permissible under Rule 8.  In holding that joinder was proper, the court noted that

> there is a key link between the two offenses – one scheme stemmed from the other – and that link provides a sound basis for joinder under rule 8(b).  Appellants and their cohorts manipulated the Hyfin accounts simultaneously to advance the [meter] scheme and to accumulate unreported income.  The acts involved in each scheme have more than a temporal and spatial relationship.  Significantly, the tax fraud hinged on the fraudulent activities taken to advance the [meter] scheme.  Consequently, proof of one scheme is indispensable for a full understanding of the other.

Id. at 1044.[6]  Similarly, "[f]rom the inception of his

_____

[6] The court there further recognized that the financial benefits derived from the quid pro quo relationship "were part and parcel of the tax fraud."  Turoff, 853 F.2d at 1044.  The court ultimately held that "applying a commonsense rule to these facts, we conclude that a reasonable person would easily recognize the common factual elements that permit joinder of the mail fraud charges and the tax fraud charges in one indictment."  Id.  For the reasons discussed below, commonsense dictates a contrary conclusion in this case.

14

relationship with Lee, Turoff's budding misuse of his position as Taxi Commission Chairman and his unreported Hyfin account income went hand in hand." Id.

Turoff is distinguishable from the facts of this case. First, no link exists here between the crimes charged other than that the same participants were allegedly involved. As discussed above, however, that by itself is insufficient to make joinder appropriate where the two crimes are distinct from one another by nature. Moreover, whereas Turoff misused his position as Taxi Commission Chairman to commit both the tax and mail fraud crimes, the Government here only alleges that Mr. Van Berry abused his position of authority to commit the robbery. The most the Government here can say is that "it certainly was to the defendants' benefit that defendant Clinton Van Berry once worked in that office [of the Mayor of West Cape May] and knew the current mayor for some time." (Govt. Br. at 12.) That statement, though, in no way connects the bribery to the robbery and, thus, is insufficient to satisfy the joinder requirements of Rule 8.

For the above reasons, Counts 1 and 2 have been improperly joined with Counts 3 and 4 and will be severed for separate trials.

B.    Prejudicial Joinder:  Rule 14(a) Severance

Defendants additionally seek severance of defendants as to Counts 1 and 2.  Defendants do not argue that joinder of those counts is improper under Rule 8.  Rather, they maintain that the introduction of certain of Mr. Van Berry's post-arrest extrajudicial statements by the Government could potentially violate Mrs. Van Berry's Sixth Amendment rights and, thus, would be unfairly prejudicial under Rule 14.[7]

Where defendants are properly joined, there is a strong presumption that the trial of the matters will go forward as a joint trial.  See Richardson v. Marsh, 481 U.S. 200, 209 (1987) (observing joint trials "play a vital role in the criminal justice system").  Notwithstanding this presumption, courts have discretion to sever separate offenses if joinder would result in prejudice to the defendant.[8]  See United States v. Eufrasio, 935 F.2d 553, 568 (3d Cir.), cert. denied sub nom. Idone v. United

---

[7] The Government has made clear that it will not seek to introduce any statement made by Mrs. Van Berry.

[8] It should be noted that severance of offenses under Rule 14(a) in cases where joinder is proper is not a practice favored by courts.  See United States v. Pierce, 733 F.2d 1474, 1477 (11th Cir. 1984) ("Joinder is favored for reasons of judicial economy.")  Indeed, there have not been many cases in which courts have granted a defendant such relief.  1A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 222 (3d ed. 1999).

<u>States</u>, 502 U.S. 925 (1991).  Rule 14(a), Fed. R. Crim. P.,

provides:

> If the joinder of offenses or defendants in an
> indictment, an information, or a consolidation for
> trial appears to prejudice a defendant or the
> government, the court may order separate trials of
> counts, sever the defendants' trials, or provide any
> other relief that justice requires.

To obtain severance, a defendant must demonstrate that "there is

a serious risk that a joint trial would compromise a specific

trial right of one of the defendants, or prevent the jury from

making a reliable judgment about guilt or innocence."  <u>Zafiro v.</u>

<u>United States</u>, 506 U.S. 534, 539 (1993) (considering whether

severance of defendants was required under Rule 14); <u>see</u> <u>United</u>

<u>States v. Rodriguez</u>, 2002 U.S. App. LEXIS 24628, at *30-31 (3d

Cir. Dec. 5, 2002) (unpublished opinion) (relying on <u>Zafiro</u> in

upholding the denial of severance of offenses).

    Here Mrs. Van Berry argues that severance is required so as

to preserve her Sixth Amendment right to confrontation.

"Ordinarily, a witness whose testimony is introduced at a joint

trial is not considered to be a witness 'against' a defendant if

the jury is instructed to consider that testimony only against a

codefendant."  <u>Richardson v. Marsh</u>, 481 U.S. 200, 206 (1987).

The Supreme Court has carved out a "narrow exception" to that

rule, however, in cases where the proffered statement "expressly

implicat[es]" the co-defendant and where the defendant who

uttered the statement does not testify.  <u>Bruton v. United States</u>,

17

391 U.S. 123, 126 n.1 (1968).[9] In other words, "a defendant is
deprived of his Sixth Amendment right of confrontation when the
facially incriminating confession of a nontestifying codefendant
is introduced at their joint trial, even if the jury is
instructed to consider the confession only against the
condefendant."  Marsh, 481 U.S. at 207.  The Bruton rule will
apply where there is not the "slightest doubt . . . at the time
[the] confession was introduced . . . that it would prove
'powerfully incriminating.'"  Richardson, 481 U.S. at 208 (quoting
Bruton, 391 U.S. at 135).  "When a codefendant's extrajudicial
statement does not directly implicate the defendant . . . the
Bruton rule does not come into play."  United States v. Belle,
593 F.2d 487, 493 (3d Cir. 1979) (en banc).

     In Richardson, the Court held the Bruton rule did not apply
because the defendant's confession "was not incriminating on its
face, and only became so when linked with evidence introduced
later at trial (the defendant's own testimony)."  481 U.S. 208.
There, two defendants were charged with assault and double

---

     [9] In Bruton, a witness testified at a joint trial that one of
the defendants, Evans, orally confessed to committing an armed
robbery with his co-defendant (petitioner).  The Court held that
"because of the substantial risk that the jury, despite
instructions to the contrary, looked to the incriminating
extradjudicial statements in determining petitioner's guilt,
admission of Evans' confession in this joint trial violated
petitioner's right of cross-examination secured by the
Confrontation Clause of the Sixth Amendment."  Bruton, 391 U.S.
at 126.

homicide.  At trial, the State introduced a post-arrest confession by one of the defendants, Williams, which was redacted so as to omit any reference to the co-defendant, Marsh – indeed, the statement did not indicate that anyone other than Williams and Marsh's boyfriend had participated in the crime.[10]  Later on at trial, though, Marsh himself testified in such a way that, despite the redacted confession, "the defendant [was] nonetheless linked to the confession . . . ."  Id. at 202.  The Court concluded that the Bruton rule was inapplicable, reasoning that where "the necessity of such linkage is involved," the jury is more likely to obey the court's instruction to disregard the incriminating inference contained in the statement.  Id. at 208.

Here, the extrajudicial statement which the Government seeks to introduce against Mr. Van Berry is, by itself, benign.[11] The substance of that statement is that Mr. Van Berry told F.B.I. agents that he called his wife on the morning of the robbery to ask about a tooth which had been bothering her.  Moreover, Mr. Van Berry stated to the agents that he had no knowledge that his wife participated in the robbery of the courier.  Without more, these statements are not "powerfully incriminating" against Mrs.

---

[10] Marsh's boyfriend, Martin, was a fugitive at the time of trial.

[11] Following a suppression hearing on January 10, 2005, this Court denied the motion to suppress Mr. Van Berry's pre-arrest statements.

19

Van Berry and, thus, do not present <u>Bruton</u> problems.[12]

In <u>United States v. Rubio</u>, 709 F.2d 146 (2d Cir. 1983), a
similar issue was before the court when the Government sought to
introduce a defendant's extrajudicial statement only as against
him at a joint trial.  There, Concepcion (Carol) Rubio and
Richard Rosado were arrested at a hotel where they had arranged a
meeting with undercover DEA agents posing as potential narcotics
sellers.  During that meeting, Ms. Rubio showed one of the agents
a triple beam scale, a device often used by narcotics traffickers
to measure cocaine in grams, as well as a bottle of Clorox
bleach, often used to test cocaine.  Following the arrests, the
agents seized from Ms. Rubio the scale and the Clorox.  When
asked why he was at that hotel, Rosado replied that "he was there
for a weekend vacation with his wife."  <u>Id.</u> at 148.  When the
officers questioned him about the triple beam scale and bottle of
Clorox seized from Rubio, he responded that "his wife was
planning to do some cooking and cleaning over the weekend at the

_____

[12] Defendants also object to the admissibility of Mr. Van
Berry's statement under <u>Crawford v. Washington</u>, 541 U.S. 36
(2004).  There, the State sought to introduce against the
defendant his wife's out-of-court statement, made during a police
interrogation, where his wife was unavailable to testify at
trial.  The Court held that admission of that statement violated
the defendant's Sixth Amendment right to confrontation.  Here,
however, as the discussion below illustrates, Mr. Van Berry's
statement will not be introduced against Mrs. Van Berry – indeed,
the Court will instruct the jury to completely disregard that
statement as to her.  For these reasons, <u>Crawford</u> does not
prevent the admission of Mr. Van Berry's statement at a joint
trial.

hotel." Id. Rubio objected to the admission of these statements under Bruton, arguing that if the jury found these statements to be false, the jury could infer that they were made to conceal her own improper conduct.

In permitting the Government to introduce Rosado's statement, the court held that

> Rosado's statements clearly were not inculpatory as to
> Rubio; nor is this a case where a defendant has
> attempted to shift blame to a co-defendant.  Moreover,
> nothing new or incriminating was presented to the jury
> which had not already been presented through the
> testimony of [the DEA agent] who testified with regard
> to Rubio's presence at the [hotel] and the fact that
> she had shown him both the scale and the bottle of
> Clorox.  Therefore, since we find Rosado's statements
> as to Rubio to be non-inculpatory, we see no reason why
> the jury could not have received the evidence without
> an impermissible taint affecting their judgment.
> Furthermore, the limiting instructions given were
> sufficient to cure any prejudice to Rubio which may
> have been caused by admitting Rosado's statements into
> evidence.

Id. at 155.  See United States v. Lopez-Lopez, 282 F.3d 1, 13 (1st Cir. 2002) (holding statement by defendant to co-defendant to remain silent during their arrest, though "tend[ing] to be incriminating," not powerfully incriminating so as to fall within the scope of Bruton); United States v. Johnson, 297 F.3d 845, 856 (9th Cir. 2002) (admitting certain of defendant's extrajudicial statements at a joint trial where "none of the conversations involved a confession of guilt implicating" the co-defendant); United States v. Espinoza-Seanez, 862 F.2d 526 (5th Cir. 1988) (holding Bruton rule inapplicable to statement by defendant that

he agreed to make a phone call and to then go meet an
unidentified man who would help transport marijuana).

Here, like in Rubio, the statement at issue does not by
itself incriminate the co-defendant.  To be sure, the statement
about Mrs. Van Berry's tooth is probative because, as the
Government maintains, it allegedly is coded language conveying
that the target of the charged robbery was en route to the bank
with the money.  However, the statement's allegedly "true"
meaning is not apparent without reference to other evidence.  As
the Supreme Court has made clear, it is that necessary "linkage"
which takes a statement outside the scope of the Bruton rule.
Marsh, 481 U.S. at 208.  The statement is only a first step on a
path of inference of incrimination of Mrs. Van Berry if combined
with other admissible evidence of the circumstances of the phone
call.  As in Marsh, supra, there is no reason to believe that the
jury would disregard the Court's limiting instruction that it
ignore any incriminating inference as against Mrs. Van Berry
arising from this statement.

Indeed, the Government maintains that Mr. Van Berry also
stated that he had no knowledge that his wife was involved, if at
all, in the charged robbery.  Far from incriminating, that
statement on its face removes Ms. Van Berry from the robbery at
issue.  Like in Rubio, that the statement may later prove to be
false does not change that it is not powerfully incriminating on

22

its face.  <u>Rubio</u>, 709 F.2d at 154.[13]  Finally, that Mr. Van Berry telephoned his wife on the morning of the robbery is not powerfully incriminating as to Mrs. Van Berry, especially considering that the Government has indicated it will seek to introduce phone records establishing that a telephone call was placed from him to her at the indicated time.  The Court thus holds that Clinton Van Berry's statement is not powerfully incriminating of Nadine Homick-Van Berry, and it may be introduced at the joint trial on Counts 1 and 2, with an instruction to the jury that it may consider this statement only against him, consistent with <u>Bruton</u> and <u>Marsh</u>.

Defendants also argue that severance of defendants is required as to Counts 1 and 2 because of the existence of "contrary defenses."  (Def. Br. at 5.)  The Supreme Court has held that Rule 14 does not require severance as a matter of law when defendants present "mutually antagonistic defenses."  <u>United States v. Zafiro</u>, 506 U.S. 534 (1993).  Instead, in such circumstances the tailoring of relief to be granted, if any, is left "to the district court's sound discretion."  <u>Id.</u> at 539.

Mutually antagonistic defenses are those where the defenses conflict "to the point of being irreconcilable and mutually exclusive."  <u>United States v. Provenzano</u>, 688 F.2d 194 (3d Cir.

---

[13] That here, unlike in <u>Rubio</u>, one defendant may attempt to shift blame to a co-defendant does not change the determination that the statement is not by itself powerfully incriminating.

1982) (quoting <u>United States v. Crawford</u>, 581 F.2d 489, 491 (5th Cir. 1978)).

> "[M]utually exclusive defenses . . . exist when acquittal of one codefendant would necessarily call for the conviction of the other."  This type of situation arises "when one person's claim of innocence is predicated solely on the guilt of a co-defendant."  In determining whether mutually antagonistic defenses exist such that severance may be required, the court must ascertain whether "the jury could reasonably construct a sequence of events that accommodates the essence of all [parties'] defenses."

<u>United States v. Voigt</u>, 89 F.3d 1050, 1094 (3d Cir. 1996) (citing references omitted).  "[C]ourts have consistently held that finger-pointing and blame-shifting among coconspirators do not support a finding of mutually antagonistic defenses."  <u>Id.</u> at 1095 (citing <u>Provenzano</u>, 688 F.2d at 198).  Indeed, as the Court of Appeals has indicated, "[s]ince <u>Zafiro</u>, claims based on mutually antagonistic defenses have usually been found insufficient to warrant severance without a strong showing that such specific rights were impaired."  <u>United States v. Balter</u>, 91 F.3d 427, 433 (3d Cir.), <u>cert.</u> <u>denied</u>, 519 U.S. 1011 (1996).  Further, the <u>Balter</u> opinion noted, it was aware of no cases reversing the denial of severance on the ground that one co-defendant might become a "second prosecutor" of another alleged co-conspirator at trial.  <u>Id.</u> at 434.

Here, defense counsel have not offered mutually antagonistic defenses likely to impair any specific trial right or prevent the jury from making a reliable determination of guilt or innocence.

24

Counsel for Defendant Clinton Van Berry will put forth an innocence defense, arguing that Mrs. Van Berry took advantage of her husband's position as tax collector and perpetrated the robbery without his knowledge.  Mrs. Van Berry has not revealed her theory of defense, so one cannot ascertain that there is mutual antagonism between co-defendants requiring severance. Even though Clinton Van Berry's defense "puts [Mrs. Van Berry] in a very unfavorable light," (Def. Br. at 6,) it will not "compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539.  It amounts to nothing more than finger-pointing by one alleged co-conspirator against another.  To the extent it is based upon testimony of witnesses, Mrs. Van Berry will have ample opportunity for cross-examination and rebuttal.  The presumption of a joint trial for co-conspirators is significantly stronger than any prejudice to Mrs. Van Berry arising from this joint trial with her husband, or vice versa.  Such finger-pointing does not warrant severance.

For all of the above reasons, Defendants will be tried jointly as to Counts 1 and 2.

25

## III. CONCLUSION

Defendants here have been charged with:  (a) conspiracy and attempt to obstruct commerce through robbery (Counts 1 and 2); and (b) bribery and conspiracy to commit bribery concerning a federally funded program (Counts 3 and 4).  Because joinder of Counts 1 and 2 with Counts 3 and 4 is improper under Rule 8, the counts will be severed and there will be two separate trials.[14] The motions for severance of Defendants on Counts 1 and 2 will be denied.  The accompanying Order is entered.

**May 18, 2005**                          **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          U.S. District Judge

---

[14] The trial herein is scheduled for Monday, June 13, 2005. Due to the severance, the United States may elect whether it will first proceed with Counts 1 and 2 or with Counts 3 and 4 by giving notice within 7 days hereof.